# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL AUGUSTINE, et al., | : | CIVIL ACTION |
| Plaintiffs; | : | |
| | : | No. 2:13-CV-06606-BMS |
| v. | : | |
| COMMISSIONER CHARLES RAMSEY, et al., | : | Jury Trial Demanded |
| Defendants. | : | |

## ORDER

AND NOW, this        day of                    , 2014, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Fed.R.C.P. 12 and Plaintiff's Reply in Opposition thereto, it is hereby ORDERED AND DECREED that said Motion is DENIED. Defendants are ORDERED to Answer Plaintiffs' Complaint by              .

BY THE COURT:

_____
                   , J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOEL AUGUSTINE, et al., | CIVIL ACTION |
| Plaintiffs; | |
| | No. 2:13-CV-06606-BMS |
| v. | |
| COMMISSIONER CHARLES RAMSEY, et al., | Jury Trial Demanded |
| Defendants. | |

## PLAINTIFFS' ANSWER TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO Fed.R.Civ.P. 12

NOW COME Plaintiffs in the above-captioned matter, by and through their counsel, Krasner & Long, LLC and Paul J. Hetznecker, Esq., and answer Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12. Plaintiffs refer this Honorable Court to Plaintiffs' Brief in Support, as well as all documents constituting the record in this matter in determining this motion, and respectfully request that this Honorable Court deny Defendants' motion in its entirety and order Defendants to file an Answer to Plaintiffs' Complaint as required.

Respectfully Submitted,

_____
Lloyd Long III, Esq.
Lawrence S. Krasner, Esq.
Paul J. Hetznecker, Esq.
Elizabeth A. Hoffman, Esq.
Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL AUGUSTINE, *et al.*, | : | CIVIL ACTION |
| Plaintiffs; | : | |
| | : | No. 2:13-CV-06606-BMS |
| v. | : | |
| COMMISSIONER CHARLES RAMSEY, *et al.*, | : | Jury Trial Demanded |
| Defendants. | : | |

### BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*I.     Introduction*

In this action brought pursuant to 42 U.S.C. §1983 and supplemental state law claims, Plaintiffs seek damages for, *inter alia*, violations of their constitutional rights. Between November 27, 2011 and November 30, 2011, Defendants conspired to deprive Plaintiffs of their constitutional rights, falsely arrested, and maliciously prosecuted Plaintiffs. Defendants first claim that although all Plaintiffs were arrested in proximate time and space and under similar circumstances, these cases should not be brought together. Defendants also claim that Plaintiffs' Complaint, which adequately placed them on notice of the claims brought against them, is somehow deficient. Defendants are simply wrong.

*II.    Facts*

On or about October 6, 2011, a group that became known as Occupy Philadelphia began to gather outside of City Hall in Philadelphia, Pennsylvania to demonstrate against, *inter alia*, the vast disproportion of wealth in this country. Occupy Philadelphia amassed

at Dilworth Plaza, an area adjacent to City Hall, for approximately seven weeks. On November 27, 2011, Mayor Michael Nutter, along with Police Commissioner Charles Ramsey, issued an order evicting the Occupy Philadelphia protestors from Dilworth Plaza. In conjunction with that order, named and unnamed defendants including, but not limited to, Commissioner Ramsey, Deputy Commissioner Bethel, Captain Fisher, and other ranking members of the Philadelphia Police Department in coordination with other agencies, planned the removal of Occupy Philadelphia protestors, including Plaintiffs, from Dilworth Plaza. This plan required coordination with other city departments, including the Philadelphia Fire Department, Department of Licenses and Inspections, and the Philadelphia Department of Corrections. *See* Complaint at ¶¶ 18-19.

In the early morning hours of November 30, 2011, all twenty-six Plaintiffs--Noel Augustine, Michael Barakovich, Moshe Bitterman, Will Darwall, Gabrielle Dugan, Meggan Durst, Russell Ebright, Toorjo ("T.J.") Ghose, Sean Goins, Alex Grosskurth, Kyle Hempe, Adam Hill, Emma Johnson, Dominick Kain, Timothy Kyle, Daniel Ludwig, Collin Magness, Shawn McMonigle, Michael Morrison, Benjamin Neate, Jason Russell, James Savage, Dustin Slaughter, Walter Smolarek, Gwen Snyder, and Kevin Stutman (hereinafter "Plaintiffs") -- were unlawfully arrested in relation to "eviction night" of the Occupy Philadelphia protest. Plaintiffs James Savage and T.J. Ghose were arrested as they stood exercising their First Amendment rights in the area of 15th and Market Streets. The other twenty-four plaintiffs, who had been marching in peaceful protest, were arrested en masse after they complied with a police command to move out of the street. Plaintiffs all moved to the east sidewalk where they were corralled against the wall of a building and arrested on the orders of Defendants Commissioner Ramsey,

Deputy Commissioner Bethel, Captain Fisher, and other unnamed defendants. *See* Complaint at ¶¶ 20, 22-30.

On November 13, 2013, Plaintiffs filed a Complaint. On March 6, 2014 Defendants Commissioner Charles Ramsey, Deputy Police Commissioner Kevin Bethel, Captain William Fisher, Police Officer Joseph Sposato, Police Officer Darryl Crawford, Police Officer Rhonda Smith, Police Officer Darrell Sampson, Police Officer Angel Ortiz, Police Officer Joseph Sisca, and the City of Philadelphia (hereinafter "Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

   III.   *Legal Argument*

   *A. Complete Joinder Is Proper As All Plaintiffs Are Asserting Identical Claims To Relief Arising Out Of The Same Series Of Occurrences, And Indistinguishable Questions Of Law And Fact Common To All Plaintiffs Will Arise In This Action.*

Defendants claim that the sheer number of plaintiffs in this matter somehow renders a single action improper. But Defendants ignore that a joint trial is entirely appropriate here. Indeed, not only will a single proceeding serve the interests of judicial economy -- as opposed to twenty-six separate, but related, proceedings to burden the courts -- but is favored under the relevant rules. Fed. R. Civ. P. 20 provides, in relevant part:

(a)     Persons Who May Join or Be Joined.

   (1) Plaintiffs. Persons may join in one action as plaintiffs if:
      A. they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
      B. any question of law or fact common to all plaintiffs will arise in the action.

It is difficult to imagine a more appropriate circumstance than that presented here to join twenty-six plaintiffs in one action. Indeed, the following circumstances demonstrate that not only have Plaintiffs asserted rights to relief jointly and out of the same series of occurrences, but that virtually <u>all</u> questions of law or fact will be common to <u>all</u> Plaintiffs in this action:

- The events in question were common to all Plaintiffs and occurred in the early morning hours of November 30, 2011 over the course of approximately five (5) hours (Plaintiffs' Complaint at ¶¶20, 21, 28);

- Plaintiffs had peacefully assembled to assert their First Amendment rights and Defendants intentionally acted to interfere with that right by arresting Plaintiffs (Plaintiffs' Complaint at ¶¶22-23, 27-31);

- Defendants lacked probable cause to arrest Plaintiffs (Plaintiffs' Complaint at ¶30);

- <u>Every</u> plaintiff asserts the <u>exact same</u> constitutional violations, the <u>exact same</u> causes of action, the <u>exact same</u> injuries, and seeks the <u>exact same</u> rights to relief (Plaintiffs' Complaint at ¶¶33-35, 37-78);

- Plaintiffs <u>were jointly tried in a criminal prosecution</u> and, ultimately, completely acquitted (Plaintiffs' Complaint at ¶36).

Accordingly, Defendants' claim that joinder is improper rings hollow. Under Fed. R. Civ. P 20(a)(1), the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; *joinder of claims, parties and remedies is strongly encouraged*. <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1966).

Defendants' arguments to the contrary are incapable of changing this result. Their first claim -- that they will be prejudiced "based upon the weight of the evidence from twenty[-]six separate plaintiffs" (ECF No. 4 at 6) -- finds no support in applicable rules or precedent. The claim that the evidence against Defendants is overwhelming is hardly a reason to ignore Fed. R. Civ. P. 20.

Defendants also argue that joinder will result in a trial that *might* be long and *might* involve Defendants who did not interact with each and every Plaintiff, leading to confusion for the jury (ECF No. 4 at 6). This speculation provides no basis for the relief sought by Defendants. All events being identical is not necessary for joinder; instead, the joinder rule is supposed to be construed in light of its purpose: to promote trial convenience and expedite final determination of disputes, *thereby preventing multiple lawsuits*. Advamtel, LLC v. AT & T Corp., 105 F.Supp.2d 507 (E.D.Va. 2000); *see also* Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009) ("Rule 20 permits 'the joinder of a person who has some interest in an action ..., even when that interest is not so strong as to require his joinder' under Rule 19"), *quoting* Field v. Volkswagenwerk AG, 626 F.2d 293, 299 (3d Cir. 1980). Defendants, of course, simply ignore that granting their request will not serve the purpose of Rule 20; instead, it will burden this Court with twenty-six separate lawsuits based on the same event that occurred at the same time in the same place.

Finally, Defendants complain about expense and allege that granting their requested relief will reduce costs (ECF No. 4 at 6-7). This is difficult to imagine. Indeed, separating this case into twenty-six distinct matters -- each requiring separate pleadings, separate motion practice, separate discovery (with each current defendant and plaintiff potentially subject to being deposed in each separate suit), and, ultimately, a separate trial -- will result in enormous financial drain on all parties involved, not to mention the burden it will impose on this Court. Granting Defendants' request will, without doubt, undermine the purpose of Rule 20. *See* Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (D.C.Minn. 1968) (the rule is intended primarily to promote trial

convenience through avoidance of multiple lawsuits, extra expense to parties, and loss of time to court and parties).

In an attempt to support their argument that joinder is improper, Defendants cite George Blood & Srikanth Raghunathan v. Federal Bureau of Prisons, 2009 WL 1118471 (M.D. Pa.) (Conaboy, J., filed April 24, 2009), an unreported decision from the Middle District of Pennsylvania. Defendants' belief that Blood applies in these circumstances is wishful thinking; Blood supports Plaintiffs' position.

In Blood, the two prisoner plaintiffs alleged that on different dates separated by months, prison officials received mail that was addressed to each prisoner, then improperly opened the mail and returned it to its sender. The plaintiffs claimed that in each separate and otherwise unrelated instance, the officials' actions violated a Bureau of Prisons policy. 2009 WL 1118471 at 1.

The court found that there was insufficient commonality under Rule 20 to permit joinder of the cases; although both claims were based on the violation of the BOP's policy, the facts underlying each incident occurred on different dates and were founded upon circumstances unique to each plaintiff. Id. at 3-4.

The instant matter is obviously different than Blood. The arrest of each Plaintiff here was a separate event only if one takes a myopic view of events described in the complaint. All the arrests happened at or about the same time and for the same reason. Each individual plaintiff in the instant case suffered the same type of harm. As such, this is not a case where there will be multiple separate questions of law and fact lumped into

one trial; the same set of facts affected each Plaintiff, and the same questions of law will apply to each Plaintiff. [1]

### B. Defendants' Claim That Plaintiffs Have Failed To Set Forth A Short And Plain Statement Of Claims Entitling Them To Relief Is Meritless.

Defendants' next set of claims is that Plaintiffs' Complaint fails to meet applicable pleading standards. They are entitled to no relief as Plaintiffs' Complaint more than adequately places them on notice of the claims they must defend against.

In considering a motion to dismiss pursuant to Fed. R. C. P. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); *see also* White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). It is the defendant's burden to demonstrate that the plaintiff has not stated a viable claim. Gould Electric Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).

Federal notice pleading rules do not require plaintiffs to allege affirmatively every aspect of their claims, but only to present sufficient facts to allow the opposing party to conduct discovery and prepare a defense. *See* Fed.R.C.P. 8(a) (a complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Third Circuit stated that in considering a motion to dismiss based on a failure to state a claim argument, a court

---

[1] Defendants ask this Court to dismiss Plaintiffs' Complaint on joinder grounds (ECF No. 4 at 7). Like the rest of Defendants' arguments, this has zero basis in law. "*Misjoinder of parties is not a ground for dismissing an action*. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21 (emphasis supplied). Even if Defendants were right, they would not be entitled to the relief they seek.

should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."

Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); *see also* District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986). Thus, courts should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.; *see* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. *See* Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

Under the relevant standard of review, it is clear that defendants have not shown that any of the claims in Plaintiff's Complaint should be dismissed.

*i. The Complaint Contains Ample Factual Allegations For All Plaintiffs.*

Defendants allege that there are no specific factual allegations for twenty-four of the plaintiffs. They are wrong. Plaintiffs' Complaint alleges that twenty-four plaintiffs moved to the east sidewalk when ordered out of the street. (Complaint at ¶ 29). Plaintiffs were then falsely arrested and held for over 24 hours before they were released on bail. (Complaint at ¶¶ 30-31). Defendants' actions against Plaintiffs that resulted, *inter alia*, in Plaintiffs' unlawful arrests and malicious prosecutions form the basis for

8

their causes of action. These facts are sufficient to allow the Defendants to conduct discovery and prepare a defense.

*ii. The Complaint Contains Ample Factual Allegations for All Defendants.*

Defendants assert, in one breath, that six named Defendants were referred to collectively as "Defendant Officers" in the Complaint, and then, in the next breath, assert that there are no factual allegations individually against them. The Complaint refers to the officers collectively, rather than as individuals, because the officers acted together when falsely arresting and committing other acts against Plaintiffs en masse. More specific information will come to light in discovery, but it is known that these officers participated in the unlawful acts against Plaintiffs. These facts, too, are sufficient to allow the Defendants to conduct discovery and prepare a defense.

*iii. The Complaint Contains Adequate Allegations for Supervisor Liability as to Supervising Defendants.*

Contrary to Defendants' assertions, Plaintiffs have alleged sufficient facts to state a claim for supervisor liability as to Defendants Commissioner Ramsey, Deputy Commissioner Bethel, and Captain Fisher (hereinafter "Supervisor Defendants"). As a preliminary matter, Plaintiffs do not assert that *respondeat superior* is available in §1983 cases. Monell v. Dept. of Social Services, 436 U.S. 658, 691-92 (1978). Of course,

> [s]upervisors may only be held liable under § 1983 on the basis of their own acts or omissions. Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. Absent direct participation, a supervisor may only be held liable where "(1) the behavior of [his] subordinates results

9

> in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively link[ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence ... amounting to deliberate indifference.'

Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). (internal citations omitted); *see also* Rizzo v. Goode, 423 U.S. 362, 371 (1976) (noting requirement of affirmative link between occurrence of police misconduct and adoption of plan or policy by [supervisor's] express authorization or approval of such conduct).

Here, the Complaint states a clear case for supervisor liability as described in Whitfield. First, Plaintiffs have averred that the behavior of non-supervisor defendants resulted in violations of Plaintiffs' constitutional rights. More specifically, Plaintiffs have clearly pleaded violations of their First, Fourth, and Fourteenth Amendment rights. Second, the complaint describes the manner in which Supervisor Defendants planned the eviction and issued orders for subordinate Defendant and other unknown Officers to violate Plaintiffs' constitutional rights. Thus, the Complaint explicitly outlines supervisor encouragement, condonation, and, more specifically, supervisor *direct involvement*, as mandated in the second prong of the Whitfield test. Accordingly, Plaintiffs have alleged a *prima facie* case for supervisor liability of supervisor defendants. *See*, *e.g.*, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[p]ersonal involvement can be shown through allegations of *personal direction* or of actual knowledge and acquiescence") (emphasis added); A.M. *ex rel.* J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) ("a supervisor may be personally liable … if he or she *participated in violating the plaintiff's rights, directed others to violate them*, or, as the person in charge,

had knowledge of and acquiesced in his subordinates' violations") (emphasis added) (internal footnote omitted).

Plaintiffs have similarly alleged supervisor liability in compliance with the standards of Santiago v. Warminster, 629 F.3d 121 (3d Cir. 2010). Defendants argue that Santiago stands for the proposition that "it is insufficient to simply state a supervisor 'directed' a subordinate officer to violate a constitutional right." This is an incomplete reading of Santiago, which supports supervisor liability in this case.

The plaintiff in Santiago, a female in her 60s, alleged officers used excessive force to detain her while apprehending her grandson who lived in her house. Id. at 126. The issue before the Third Circuit was whether the plaintiff had sufficiently alleged the facts in her Complaint to support a claim for supervisor liability under the Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Twombly, *supra* standards. Id. at 128. The court used the three-part Iqbal and Twombly analysis to determine whether the complaint met the pleading standards:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (internal citations omitted).

As to the first step in the analysis, determining the elements of the claim for supervisor liability, the court cited A.M. ex rel. J.M.K., *supra*, which requires that supervisors direct others to violate the plaintiff's rights and a causal connection to the violation of the plaintiff's rights. In regard to the supervisor officers that planned the

11

operation, the court concluded that the plaintiff needed to have pled facts "plausibly demonstrating that they directed [the officers on site] to conduct the operation in a manner that they knew or should reasonably have known would cause [the officers] to deprive [the plaintiff] of her constitutional rights." Id. at 130 (citations omitted). As to the supervisor officer on site, the court concluded "[the plaintiff] must allege facts making it plausible that [the supervisor officer] had knowledge of [the constitutional violations by the officers] and acquiesced in [the officer's] violations. Id. (citations omitted).

Applying the second step in the Iqbal and Twombly analysis -- identification of elements not entitled to the assumption of truth -- the court found against the plaintiff. The court reasoned that the plaintiff's allegations were a bare recitation of the elements required. In short, the plaintiff had alleged that the supervisor officers planned and supervised the operation and acquiesced in the use of excessive force. Such allegations did not add any facts beyond the elements of the claim.

Finally, the court concluded that the plaintiff's pleadings failed to rise to a plausible level. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 132 (citing Iqbal, 556 U.S. at 678). The court concluded that it was not plausible that the planning supervisors intended for the officers to use excessive force, because people were not treated uniformly with excessive force. Thus, it was not plausible that the plan was to use excessive force. Id. at 133. Likewise, as to the supervisor present at the scene, the court concluded that it was not plausible he authorized use of excessive force, noting that the complaint "[did] not aver that he knew

12

of the allegedly excessive force, nor [did] it give rise to the reasonable inference that he was aware of the level of force used against one individual." Id. at 134, *citing* McKenna v. City of Philadelphia, 582 F.3d 447, 460 (3rd Cir. 2009).

The instant case is distinguishable from Santiago. Plaintiffs have provided ample factual basis to make the allegations of supervisor liability plausible. Those factual allegations include, but are not limited to:

- Describing the order by Mayor Nutter and Defendant Commissioner Ramsey to evict Occupy Philly protesters from Dilworth Plaza and the necessary coordination by Supervising Defendants with other agencies to execute such an eviction (Plaintiffs' Complaint at ¶19);

- Describing the plan to destroy the encampment and personal property contained therein, the plan to arrest demonstrators, and the massive police and fire department presence at Dilworth Plaza on eviction night, including the blockade formed by officers, which gathered to effectuate the plan as directed by Supervisor Defendants (Plaintiffs' Complaint at ¶20);

- Describing the arrests of two Plaintiffs who stood exercising their First Amendment rights (Plaintiffs' Complaint at ¶23);

- Describing the decision by Supervisor Defendants to direct and order the arrest of protestors based solely on expression of First Amendment rights, not criminal activity (Plaintiffs' Complaint at ¶26);

- Describing Defendant Deputy Commissioner Bethel's order to terminate protest march, and Defendant Commissioner Ramsey's order to Deputy Commissioner Bethel (Plaintiffs' Complaint at ¶28);

- Describing Defendant Captain Fisher's order for protestors to move off the street or be arrested and subsequent false arrest of protestors who moved to the east sidewalk (Plaintiffs' Complaint at ¶29);

- Describing orders by Supervisor Defendants, both named and unnamed, to falsely arrest protestors (Plaintiffs' Complaint at ¶30); and

- Describing the fact that Police escorted Plaintiffs and other members of Occupy Philadelphia in marches during the seven weeks preceding the events described in the Complaint, proving that the Supervising

13

> Defendants knew of Plaintiffs' First Amendment Rights (Plaintiffs' Complaint at ¶¶ 4, 18).

These facts go beyond a mere recitation of the elements of a claim for §1983 supervisor liability, which would merely allege that Supervisor Defendants planned/supervised the operation and acquiesced in the Constitutional violations. Plaintiffs have clearly alleged the nature of the planning required, from which Supervising Defendants certain orders came, and in what nature those orders were executed. In other words, there are facts outside mere threadbare recitation of elements of causes of action supporting the elements of the claims asserted in Plaintiffs' Complaint. These additional facts are entitled to an assumption of the truth.

Finally, Plaintiffs' allegations are plausible. As opposed to Santiago -- where use of excessive force could not be imputed to officers that planned the operation, because excessive force was not universally applied to all detainees -- the unlawful arrests here were universally applied to all Plaintiffs based on the orders from supervisory Defendants (Plaintiffs Complaint at ¶29). In addition, as to supervising defendants who were present on eviction night, there can be no argument that they did not know of the alleged conduct: they *ordered* the conduct. In Santiago, excessive force was used against one person who was not the target of the operation -- this could reasonably have gone unnoticed. Here, the arrest of twenty-six Plaintiffs for exercise of their First Amendment Rights could not have gone unnoticed.

*iv. There Is No Basis for Dismissal of the First Five Pages of the Complaint.*

Defendants assert that the first five pages of Plaintiffs' Complaint (hereinafter "the introduction") are conclusions of law and should for some reason be dismissed. Defendants provide no analysis or rule of law to support this sweeping assertion. Instead, Defendants summarily conclude that the factual background provided in the introduction is composed of conclusions of law. Defendants cite Iqbal for the proposition that the court need not accept conclusions of law as the truth. While this is true, it certainly does not require dismissal of Plaintiffs background contentions.

Moreover, the introduction does not contain mere conclusions of law. Conclusions of law are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. The introduction does not lay out the causes of action alleged in this complaint. It provides a factual background for the events alleged in the complaint.

*C. Plaintiffs Request An Opportunity To File An Amended Complaint Should This Court Dismiss Any Claims.*

In the event that this Court dismisses any counts, claims, or defendants, Plaintiffs request an opportunity to file an amended Complaint to correct any errors. Such a request is in line with precedent. *See* Swierkiewicz, *supra*, 534 U.S. at 514 (courts should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); Grayson, *supra*, 293 F.3d at 108 (courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient).

*IV. Conclusion*

Defendants are entitled to no relief. Plaintiffs request that this Court deny Defendants' motion in its entirety and order Defendants to Answer Plaintiffs Complaint as required by law.

Respectfully Submitted,

_____
Lloyd Long III, Esq.
Lawrence S. Krasner, Esq.
Paul J. Hetznecker, Esq.
Elizabeth A. Hoffman, Esq.
Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL AUGUSTINE, et al., | : | CIVIL ACTION |
| Plaintiffs; | : | |
| | : | No. 2:13-CV-06606-BMS |
| v. | : | |
| COMMISSIONER CHARLES RAMSEY, et al., | : | Jury Trial Demanded |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, LLOYD LONG III, ESQ., hereby certify that on the 20th day of March, 2014, I caused the foregoing Plaintiffs' Reply in Opposition to Defendants' Motion to Dismiss to be filed electronically and that they are therefore available for viewing and downloading from the ECF system for the below parties:

> Amanda Shoffel, Esquire
> Attorney for Defendants
> E-mail: amanda.shoffel@phila.gov
> City of Philadelphia Law Department
> Civil Rights Unit
> 1515 Arch Street, 14th Floor
> Philadelphia, PA 19103

_____
Lloyd Long III, Esq.