UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
                              .
Augustine et al.,             .      Docket #13-CV-6606 (BMS)
                              .
        Plaintiffs,           .
                              .      United States Courthouse
             vs.              .      Philadelphia, PA
                              .      April 15, 2014
Ramsey, et al.,               .      10:08 a.m.
                              .
        Defendants.           .
```
.......................................................

TRANSCRIPT OF ORAL ARGUMENT
BEFORE THE HONORABLE BERLE M. SCHILLER
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For The Plaintiffs:          Lloyd Long, Esq.
                             Krasner Hughes & Long, LLC
                             1221 Locust St.
                             Philadelphia, PA 19107

                             Paul J. Hetznecker, Esq.
                             1420 Walnut Street-Ste. 911
                             Philadelphia, PA 19102

                             Elizabeth A. Hoffman, Esq.
                             Krasner Hughes & Long, LLC
                             1221 Locust St.
                             Philadelphia, PA 19107

For the Defendants:          Amanda C. Shoffel, Esq.
                             City of Philadelphia Law
                             Department
                             Civil Rights Unit
                             1515 Arch Street-14th Fl.
                             Philadelphia, PA 19102

Audio Operator:              Chris Campoli

Transcribing Firm:          **Writer's Cramp, Inc.**
                            **6 Norton Rd.**
                            **Monmouth Jct., NJ 08852**
                            **732-329-0191**

**Proceedings recorded by electronic sound recording, transcript produced by transcription service.**

1           THE CLERK:  All rise.

2           THE COURT:  Good morning.  Good morning again.

3           ALL:  Good morning, Your Honor.

4           THE COURT:  All right.  This is the case of

5    Augustine vs. Ramsey, 13-6606.  Counsel, identify yourselves

6    for the record.

7           MR. LONG:  Good morning, Your Honor.  Lloyd Long,

8    Krasner & Long on behalf of Plaintiffs.

9           MR. HETZNECKER:  Good morning, Your Honor, Paul

10   Hetznecker, on behalf of the Plaintiffs.

11          MS. HOFFMAN:  Good morning, Your Honor, Elizabeth

12   Hoffman on behalf of the Plaintiffs.

13          THE COURT:  You feel outnumbered over there?

14          MS. SHOFFEL:  In my opinion, it's just about even,

15   Your Honor.

16          THE COURT:  Okay.

17          MR. LONG:  Wow.

18          THE COURT:  Go ahead.

19          MS. SHOFFEL:  Amanda Shoffel for the City

20   Defendants.

21          THE COURT:  All right.  Please be seated.

22          MR. HETZNECKER:  Mr. Long's going to be handling the

23   argument today, Your Honor.

24          THE COURT:  Then why are you here?

25          MR. HETZNECKER:  Well, I wanted to see you.

1            THE COURT:  Okay.  And what's your excuse?

2            MS. HOFFMAN:  I'm his associate.

3            THE COURT:  All right.

4            MS. HOFFMAN:  I'm just here for the ride.

5            THE COURT:  Okay.  You filed a Motion to Dismiss.

6    So, let's hear from you.  I've read your motion.

7            MS. SHOFFEL:  Thank you, Your Honor.  I guess I'll

8    just briefly summarize the points in the motion and then I'd

9    like to briefly address to one of the issues that Plaintiff's

10   counsel raised in their response brief.

11           THE COURT:  Okay.

12           MS. SHOFFEL:  First of all, permissive joinder in

13   this case, if allowed by the Court, will result in prejudice

14   to the Defendants, confusion of the issues to the jury --

15           THE COURT:  In what way?

16           MS. SHOFFEL:  Well, prejudice to the Defendants

17   because 26 Plaintiffs testifying about something that

18   happened will amount, in our opinion, to propensity evidence.

19   If everyone's saying, the Defendants collectively did

20   something wrong, that's not the appropriate standard in civil

21   rights cases.  In civil rights cases, they have the burden to

22   show that each individual Defendant has liability in this

23   case.

24           THE COURT:  Well, under Rule 20, didn't these claims

25   all arise out of the same transaction or occurrence?

1          MS. SHOFFEL:  That's --

2          THE COURT:  There's really only one question of law

3    or fact and they're common to all Plaintiffs?

4          MS. SHOFFEL:  That's correct, Your Honor, but even

5    in the response brief, they admitted that there are claims

6    particular to some Plaintiffs and not others, and claims

7    particular against certain Defendants and not others.  So,

8    let me explain that.  First of all, they claim in the

9    response that two Plaintiffs -- only two Plaintiffs are

10   identified as having First Amendment claims.  Plaintiff --

11   excuse me, James Savage and T.J. Ghose, but there are no

12   allegations by the remaining 24 Plaintiffs that there was any

13   First Amendment claim.

14       Similarly, they admit in their response brief that there

15   are certain claims against the supervisory Defendants, those

16   being Ramsey, Deputy Commissioner Bethel, and Captain Fisher,

17   who gave the orders to make the arrest, but they admit, or

18   concede, in their response that those are the only claims

19   against those officials and there are still excessive force

20   claims against those officials, and other claims that are not

21   particular to those Defendants.

22         THE COURT:  All right, go ahead.

23         MS. SHOFFEL:  Thank you.  In addition to being -- to

24   prejudicing the Defendants, it will be a confusion of issues

25   to the jury.  As I stated before, liability for each

1    particular Defendant, also unnecessary witnesses.  There are
2    certainly some Plaintiffs and some Defendants who will have
3    no knowledge of some of the arrests.
4            THE COURT:  You don't think a jury is capable of
5    sorting out which witness is dealing with which Plaintiffs?
6            MS. SHOFFEL:  Your Honor, I do think by the time
7    that the case gets to a jury, we'll be able to determine it.
8    But according to Rule 8, we have to have notice of each claim
9    against each Defendant, and that's the second part of my
10   argument and I'm -- that we addressed in our motion.  This
11   fails to meet the requirements of Rule 8 for a couple of
12   reasons.  As I stated before, there are some claims that are
13   particular to certain Plaintiffs and not others, and certain
14   Defendants and not others.  In addition, there are six police
15   officers who are identified as parties and then never
16   mentioned again throughout the entire body of the Complaint
17   anywhere.  There are -- the first five pages of the Complaint
18   detail the history --
19           THE COURT:  Well, do you want them to file an
20   Amended Complaint?  Is that what you want them to do?
21           MS. SHOFFEL:  Yes, Your Honor.
22           THE COURT:  Okay.  Thank you.  Let me hear from you,
23   Mr. Long.
24           MR. LONG:  Certainly.  And good morning, Your Honor.
25           THE COURT:  Good morning.

1        MR. LONG:  Your Honor, I know that the Court's aware

2    of the allegations in the Complaint by the Plaintiffs, the

3    factual allegations.  So, I'd like to take an opportunity to

4    briefly respond to some of the things that moving Defendants

5    have raised.  The first one is that the First Amendment

6    Complaints are somehow unique to only two Plaintiffs, who

7    would be T.J. Ghose and James Savage.  That's simply an

8    inaccurate reading of both the Complaint and our response to

9    the moving Defendant's Motion to Dismiss.  In fact, all the

10   Court needs to look at are paragraphs 22 to 23, and 27 to 31

11   of the Complaint to see that the allegation of violation of

12   First Amendment rights is universal to all Plaintiffs.  The

13   mere fact that two Plaintiffs had their First Amendment

14   rights trampled upon a few blocks from the other 24

15   Plaintiffs does not somehow make the two Plaintiffs mentioned

16   by name in one spot, and the other 24 Defendants separate

17   claims.

18       These are claims that occurred the same night, in the

19   same two to three block vicinity involving the same group of

20   people, the same Defendants.  Plaintiffs are all alleging the

21   exact same harms.  They are --

22       THE COURT:  The City has asked -- she asked whether

23   or not you could file an Amended Complaint that might be able

24   to clarify it a little better for her.  Are you able to do

25   that or do you think you've made it as clear as possible

1    here?

2            MR. LONG:  Your Honor, at this time -- I mean, I

3    think that we have made -- we have put the City on notice of

4    the claims that they're defending against.  And an Amended

5    Complaint is simply asking us, asking Plaintiffs to put forth

6    something that the Rule -- that neither the Rules nor

7    applicable precedent requires.  They're asking for

8    essentially a State Court pleading.  They're asking us to say

9    the exact factual allegations that discovery is going to

10   disclose.  And what we're required to do under Rule 8 is put

11   forth a short and plain statement.

12           THE COURT:  All right.  I'm just throwing it out.

13   That's --

14           MR. LONG:  I understand, Your Honor.

15           THE COURT:  Okay.

16           MR. LONG:  I do.

17           THE COURT:  Have a seat.

18           MS. SHOFFEL:  Okay.

19           THE COURT:  I'm still - I'm not done with him.  In

20   Count 4, you allege that the Defendants committed assault in

21   violation of the United States Constitution.  What provision

22   of the Constitution are you relying on?

23           MR. LONG:  That would be the Fourth Amendment, Your

24   Honor.

25           THE COURT:  Fourth Amendment?

1          MR. LONG:  Yes, sir.

2          THE COURT:  Okay.  And what facts do you have that

3    support your excessive force claim?

4          MR. LONG:  That the officers grabbed people who were

5    not engaging in any criminal activity.

6          THE COURT:  Excessive force?

7          MR. LONG:  Yes, Your Honor.  That they grabbed

8    people who --

9          THE COURT:  Excessive force is a specific kind of

10   allegation.

11         MR. LONG:  I understand.

12         THE COURT:  And you're saying that the mere fact

13   that they grabbed people makes it an excessive force claim?

14         MR. LONG:  What I am saying is that --

15         THE COURT:  I can understand assault, maybe a

16   battery, maybe whatever, but excessive force?

17         MR. LONG:  Your Honor, I -- under the pleading

18   standards that we --

19         THE COURT:  Okay.  I'm just wondering what your --

20   is this really an excessive force claim?

21         MR. LONG:  I think that there is a viable excessive

22   force claim here.  Whether discovery reveals that at some --

23         THE COURT:  Well, you know your Plaintiffs.

24         MR. LONG:  I do, Your Honor.

25         THE COURT:  Were any of them beaten, bloody,

1  mutilated?

2      MR. LONG:  Not to my knowledge, Your Honor.  I

3  cannot say that there --

4      THE COURT:  So, why would you even put in excessive

5  force?

6      MR. LONG:  Your Honor, that was a decision that we

7  made at the time that we crafted the pleading.

8      THE COURT:  Okay, and you also have intentional and

9  negligent infliction of emotional distress.  Did those kinds

10  of allegations require some kind of physical component to it,

11  like touching of some kind?

12      MR. LONG:  No, Your Honor.  I believe that they

13  merely require activity that rises to the level of

14  outrageousness, or that inflicts serious emotional distress

15  upon the Claimants.  I don't believe that it actually

16  requires a physical touching.

17      THE COURT:  Are you alleging that the supervisor

18  Defendants are liable for violations of State law by

19  arresting officers?

20      MR. LONG:  If I may, Your Honor.

21      THE COURT:  What legal theory are you alleging that?

22  (Pause in proceedings)

23      MR. LONG:  Your Honor, with respect to the State law

24  claims, Section 1983 prohibits respondeat superior.  State

25  law claims do not prohibit respondeat superior.  And given

1   the fact that --

2          THE COURT:  So, that's the legal theory against the

3   -- under the State law for the supervisory Defendants to be

4   held liable?

5          MR. LONG:  Specifically for the State law claims,

6   that is correct, Your Honor.

7          THE COURT:  And I guess I'm similarly -- what legal

8   theory are you seeking to hold the City of Philadelphia

9   liable for violations of State law?

10         MR. LONG:  Your Honor, it's -- if I may have one

11  moment to review the Complaint.

12     (Pause in proceedings)

13         MR. LONG:  Your Honor, the City of Philadelphia is

14  not a Defendant in any claim except Count 15.  All -- the

15  first 14 counts are against the individual Defendants.  Count

16  15 is a Monell claim against the City of Philadelphia.

17         THE COURT:  Do you know of any policy that you're

18  alleging that the City violated, or has a policy to arrest

19  these particular Plaintiffs?

20         MR. LONG:  Yes, we do, Your Honor, and it's --

21         THE COURT:  What policy is that?

22         MR. LONG:  The policy is going to be revealed

23  through discovery, but more specifically, Your Honor, it's

24  our position that the City of Philadelphia throughout years

25  has -- throughout a period of many years has actively

```
 1   suppressed actions like the Occupy movement.

 2              THE COURT:  Can you give me an example?

 3              MR. LONG:  Certainly, Your Honor.  The RNC

 4   Convention back in, I believe it was 2000, there were mass

 5   arrests of people --

 6              THE COURT:  But what was the policy?  Is it a

 7   written policy?  What is it?

 8              MR. LONG:  Well, Your Honor, I would submit that

 9   this simply is -- the Court is asking Plaintiffs to put forth

10   a Summary Judgment Motion after discovery.  And I --

11              THE COURT:  Or is this -- you're just making an --

12   there's nothing you can point to right now, is that what

13   you're saying?

14              MR. LONG:  I'm saying that I can point to historical

15   knowledge, including --

16              THE COURT:  Of things that have happened?

17              MR. LONG:  Yes, Your Honor.

18              THE COURT:  But even in that case, with the RNC, did

19   anyone sue the City?

20              MR. LONG:  Your Honor, may Mr. Hetznecker speak on

21   this particular point?

22              THE COURT:  Of course he can.

23              MR. HETZNECKER:  Thank you, Judge.  I would --

24              THE COURT:  I had to go through all kinds of hoops

25   to finally get you to talk.
```

1          MR. HETZNECKER:  Well, no, Mr. Long has done an
2     excellent job.  I will provide, as I am older than he is,
3     much older, he's deferred to my age and my experience in
4     this.  Not only RNC during 2000, which I was a party and
5     Mr. Krasner and I was a party in representing many of those
6     Defendants, both in the criminal side but also in the civil
7     rights case, but since then, I have represented over the
8     course of the last -- and even before 2000, over the last 20
9     years, numerous individuals who have been arrested based on
10    what we believe to be a de facto policy.  More importantly,
11    there is a policy, we believe, that was carried over from
12    Commissioner Ramsey from Washington, D.C., and the efforts he
13    made to suppress dissent in Washington, D.C., and duplicated
14    and replicated those efforts here in Philadelphia as
15    Commissioner of Police.  So, we seek to establish this
16    through discovery.

17         And it's information -- and I agree with Mr. Long.  I
18    think it's an interesting question you posed, but it's really
19    a question that would be raised at a Motion for Summary
20    Judgment.  On a Motion to Dismiss, I think we've plead
21    clearly the question of the Monell claim.  It's plead clearly
22    and it's enough to put them on notice.  But we -- I'm putting
23    the Court on notice, we seek discovery that goes back
24    historically in the City of Philadelphia on a policy and
25    practice that would establish violation of First Amendment

1   rights, and I'll give you an example.

2       In this particular case, what they did was they trained

3   the officers to have a -- to be on video and we've got the

4   videos, be on video reaffirming the protection to the First

5   Amendment.  It's fascinating because what they do is they'll

6   say over and over again in a gathering, okay, there's a

7   supervisor standing at the front of the room and says, okay,

8   we all understand that we're not here to violate anyone's

9   First Amendment rights, and then precisely they do exactly

10  that on the night in question.  They did that in view of --

11  full view of the fact that for 43 days or almost 60 days,

12  they had chaperoned, so to speak, through civil affairs, and

13  bike police officers, and others, chaperoned marches and

14  demonstrations that went throughout the City protecting those

15  First Amendment rights, allegedly.  And then on the night in

16  question, they did just the opposite, and they did the

17  opposite based on the directive, we believe, and we know for

18  a fact with respect to Officer Bethel, we also believe with

19  respect to Ramsey, they did so precisely in contravention of

20  that stated alleged staged protection of First Amendment

21  rights which they put on video.

22      This goes back, as I said, this goes back to the BIO

23  Convention in 2005 where people were wrongfully arrested and

24  then acquitted on First Amendment arguments.  It goes back to

25  arrests that were made in countless demonstrations going back

1   to 1993, in which I represented -- since I left the

2   Defenders, pro bono, mind you, protestors who have protested

3   everything from the death penalty to -- against the death

4   penalty to corporate power, to educational policies.

5   Throughout the last 20 years, there has been an effort on the

6   part of the police department to violate First Amendment

7   rights in a systematic way.

8           Now, to the extent of that -- how far that evidence or

9   how much of that evidence gets in is a question for the Court

10  later on for trial, obviously.  But for pleading purposes,

11  we've established, I think, in the Complaint enough to put

12  them on notice and we also believe we have enough evidence

13  even at this point to make the specific discovery requests

14  that I'm going to submit to the City for specific information

15  about the City's policies regarding arrests of protestors,

16  surveillance of protestors, because there's another aspect of

17  this which we mention in the Complaint.  Part of the chilling

18  effect that implicates, or undermines, the First Amendment is

19  the extent to which the City allowed for surveillance and

20  undercover infiltration of the Occupy movement and here in

21  Philadelphia.

22          THE COURT:  By who?

23          MR. HETZNECKER:  By the City of Philadelphia, by the

24  -- we, believe the Federal Anti-Terrorism Task Force.

25          THE COURT:  But why isn't that in this?

1      MR. HETZNECKER:  I do mention surveillance in the

2   Complaint.  It is --

3      THE COURT:  I don't mean just surveillance, the

4   federal --

5      MR. HETZNECKER:  Well, we seek --

6      THE COURT:  -- component of this.

7      MR. HETZNECKER:  Well, we seek to discover as much

8   as we can regarding that part of it and --

9      THE COURT:  Okay.

10     MR. HETZNECKER:  -- that's going to be an element of

11  our discovery requests.

12     THE COURT:  Okay, all right.

13     MS. SHOFFEL:  Your Honor, if I may just briefly

14  respond to a couple of points --

15     THE COURT:  Sure.

16     MS. SHOFFEL:  -- raised by Plaintiff's counsel.

17  Thank you.  First, on the intentional infliction of emotional

18  distress claims, they are required to show by competent

19  medical evidence through an expert evidence of those claims

20  to substantiate an intentional tort.

21     THE COURT:  Well, he said that at this stage you

22  just have to make a generic comment, letting them know.  See,

23  I'm putting them on notice that if they don't have it, they

24  shouldn't be processing it, and pursuing it.

25     MS. SHOFFEL:  Thank you, Your Honor.  The second

1    item is that negligent infliction of emotional distress is

2    barred by the Political Subdivision Tort Claims Act.  That is

3    something that there's not an exception to, and it's still

4    included in the Complaint against all Defendants.

5    Additionally, the Political Tort Claims Act bars the theory

6    of respondeat superior against the City or supervisors for

7    the acts of an employee.  So, at least some of these

8    supervisory Defendants should not be included in the State

9    claims.  And finally, on the Monell issue, I understand

10   everything that Plaintiff's counsel has represented here.

11   That was not clear to me through this Complaint.  I would,

12   again, renew my request for them to file an Amended Complaint

13   with this information in it.

14        MR. HETZNECKER:  Judge, with all due respect, there

15   is -- there are paragraphs, and Mr. Long is looking for them,

16   in which I -- we allege the federal involvement, coordination

17   between the Federal Government and the City police.  The City

18   police, the civil affairs unit, and other -- the intelligence

19   unit of the City police department is fronting, essentially,

20   this investigation.

21        If I may, Judge, paragraph 4, it says in response, "the

22   Philadelphia Police Department, through orders from the

23   Defendant Commissioner Charles Ramsey, Deputy Commissioner

24   Bethel, and other known and presently unknown police

25   officials, in conjunction with federal authorities,

1  maintained a constant presence through direct and undercover

2  surveillance, as well as infiltration of the Occupy Philly

3  demonstrators during the course of the seven week protest."

4  So, and then we go on and describe the many meetings and

5  marches that take place.

6        THE COURT:  All right, let me ask you while I have

7  you here, you have an allegation of conspiracy against the

8  six Defendant officers who were not supervisors.  Do you have

9  any facts to support a conspiracy of the non-supervisory

10  Defendant officers?

11        MR. HETZNECKER:  The conspiracy would envelope

12  everyone.  The conspiracy is a part of the --

13        THE COURT:  Well, is there some kind of evidence of

14  an agreement?

15        MR. HETZNECKER:  Yes.  Well, we think we can

16  establish the agreement.  And as you know, the agreement can

17  be established either through a direct agreement, and as you

18  instruct juries frequently, that agreement is always often

19  not -- is tacit or it's established by circumstantial

20  evidence.  I think we can establish more than circumstantial

21  evidence.  I think we can establish much more than that

22  because on the night of the Occupy arrests, there was a

23  national effort to arrest Occupy protestors throughout the

24  country.  Now, it's our position that that was part of the

25  conspiracy, that there was an agreement at a high level to

1  make arrests --

2           THE COURT:  That may be at a higher level.  I'm

3  talking about these six officers on the street.

4           MR. HETZNECKER:  Well, they're -- they would be part

5  of the agreement because they were ordered to do so.

6  Certainly, you know, when someone is given an order to

7  execute a particular agreement at a higher level, we can

8  allege that, you know, the -- it's like the guy on the

9  corner, the street dealer on the corner, the question is

10  whether he's enveloped in a larger conspiracy is really a

11  question for the jury.  That is whether or not he understood

12  that the guys who arrange for the cocaine to be delivered to

13  that particular corner, people they may have never met, were

14  part of a greater conspiracy that enveloped the activity.

15  And we're alleging the same thing here.  Essentially, that's

16  a question for the jury.

17      Now, certainly at a Summary Judgment Motion, a lot of

18  these issues, I think, flesh themselves out and there may be

19  -- and I'll defer to Mr. Long on this, there may be certain

20  claims, maybe some of the State law claims that we would

21  concede at that point.  But this is at a Motion to Dismiss,

22  and I think based on the well-pleaded Complaint at this

23  point, I would request that Your Honor deny the City's Motion

24  at this juncture.  I think we need to go forward with

25  discovery and flesh a lot of these issues out through

1    discovery.

2          MS. SHOFFEL:  Your Honor, just briefly on the

3    conspiracy issue.  The District Court judgment and underlying

4    opinion in Bell Atlantic discussed the pleading requirements

5    for a conspiracy claim and it was {quote}{unquote} "a plus

6    factor" that is required, either a common agreement or an

7    allegation that behavior against the individual Defendants

8    economic interest absent an agreement, and neither of those

9    things are present in the Plaintiff's Complaint and that's

10   why the conspiracy claim at this point is insufficient as

11   well.

12         THE COURT:  All right, anything else?

13         MR. HETZNECKER:  One second, Your Honor.

14         THE COURT:  Go ahead.

15         MR. HETZNECKER:  We believe that's not quite

16   accurate and we're looking for the section in the Complaint.

17         MR. LONG:  Your Honor, in paragraph 33 of the

18   Complaint, we state that as a direct and proximate result of

19   the Defendant's actions, the actions being planning to arrest

20   the demonstrators, Plaintiffs were deprived of rights,

21   privileges, and immunities under the First, Fourth, and

22   Fourteenth Amendments of the United State Constitution,

23   particularly the right to be free from retaliatory conduct

24   against protected speech and assembly, and a number of other

25   rights, including the right to be free from malicious

1    prosecution and unlawful arrest.  Plaintiffs were similarly

2    deprived of the right not to be victim of conspiracies of

3    State actors to violate those clearly established rights.

4         We have pleaded that the Defendants acted in concert and

5    conspiracy to arrest --

6         THE COURT:  An officer merely following the orders

7    to arrest people isn't a co-conspirator.  He may be doing

8    other things, but when you're alleging a conspiracy, police

9    officers at the street who didn't sit down and talk to these

10   people, I have -- I'm having difficulty with that.

11        MR. HETZNECKER:  Judge, why would that be no

12   different than the street corner dealer as opposed to the guy

13   who transported from Florida --

14        THE COURT:  Because the street corner dealer is

15   dealing in drugs which he knows are illegal.

16        MR. HETZNECKER:  But in this particular case, the

17   cops should know that it's illegal to arrest someone without

18   probable cause.  And in fact, it's presumed, in a case --

19        THE COURT:  But that doesn't make it a conspiracy.

20        MR. HETZNECKER:  It could, in fact, because if

21   they've agreed to violate someone's rights without probable

22   cause, in contravention of the First and Fourth Amendments,

23   then it is a conspiracy.

24        THE COURT:  Do you think a beat man, a beat

25   patrolman --

1          MR. HETZNECKER:  Sure.  In fact, there's a case,

2     Your Honor, if I may.  I think -- I don't know if I have it

3     in my notes, but there's a case in which we presume -- the

4     Court presumes that a police officer understands that he must

5     have probable cause to make an arrest.  So, based on that,

6     that presumption that the Court -- that the law automatically

7     presumes that the officer understands the power that he has

8     to make an arrest, but also the limitations on that power.

9     So, if in fact he conducts an arrest that he knows to be in

10    contravention of the First and Fourth Amendment, then yes, it

11    falls within a conspiracy.

12         Now, my argument is that, again, I think we're leaping

13    ahead to a Motion for Summary Judgment kind of argument.  The

14    real question here is, can we establish through discovery the

15    elements that we've set forth in a well-pleaded Complaint?

16    And I'm very confident we can, and you know, certainly if

17    we're at the point where discovery is closed and we're being

18    -- you know, we -- there's some question about that, I'll

19    stand here either concede it, or I'll argue the point.

20         But at this level, certainly an officer that is

21    presumed, and again I can -- if the Court will wait one

22    moment, I think I have the cite and if I don't, I can pass it

23    on to the Court, that a police officer's presumed to

24    understand that he must have probable cause.  Here it is.

25    "Police officers clearly know that they need probable cause

1    to make an arrest and know that they are personally liable."

2    And this is <u>Pritzker v. City of Hudson</u>.  It's at 26 F.Supp.

3    2d 433.  It's a New York District decision in 1998.  "Police

4    officers know that it is a violation of well-settled

5    Constitutional rights to arrest without probable cause."

6         So, it's clear to me that -- at least, I hope it's clear

7    to the Court in the Complaint that if, in fact, they were

8    ordered to make an arrest without probable cause then they

9    would -- that would envelope them in a conspiracy because

10   they are contravening their own individual, you know, rights

11   and obligations.  There is no, you know, Nuremberg defense

12   for that.  They essentially have to follow what they know to

13   believe the law.  So, even if they're ordered to violate the

14   law, then certainly -- and they do so, then they're part of

15   that conspiracy.  And that's what we alleged here.  That when

16   the protestors were ordered to get out of the street and get

17   onto the sidewalk, and they did so, and then they were

18   arrested because they complied with that order, after having

19   been marched with the alleged protection, fully enveloped of

20   all the police officers both front and back, then that's a

21   clear violation of the Fourth and First Amendments --

22             THE COURT:  All right, final word.

23             MR. HETZNECKER:  -- and it's a conspiracy.

24             MS. SHOFFEL:  Thank you, Your Honor.  I actually

25   agree with some of what Plaintiff said.  I mean, every police

1    officer should know that they can't make an arrest without

2    probable cause.  That, in and of itself, is not sufficient to

3    allege a conspiracy.  And when Mr. Long was -- he paraphrased

4    a very important part of this Complaint.  He said, "as a

5    direct and proximate result of the Defendant's actions," and

6    he added "through planning."  That's simply not in the

7    Complaint.  All it says is "actions," it's insufficient on

8    its face.  Thank you.

9            THE COURT:  All right.  You'll get my ruling.  Thank

10   you.

11           ALL:  Thank you, Your Honor.

12       (Court adjourned)

13

14                    CERTIFICATION
15   I certify that the foregoing is a correct transcript from the
16   electronic sound recording of the proceedings in the above-
17   entitled matter.
18
19
20   *Lewis Parham*                          4/29/14
21
22   _____        _____
23   Signature of Transcriber              Date